IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  12-cr-00508-LTB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    GREGORY WILLIAM BELL,

    Defendant.
_____

**GOVERNMENT'S REPLY BRIEF ON LOSS AND RESTITUTION**
_____

The United States of America through undersigned counsel files the following reply to the defendant's response [Doc. #31].

**The Kruse Loan (Loan #1 on Gov. Ex. 1)**

The defendant argues that the actual loss, and consequently the restitution, resulting from his false statements in obtaining the Kruse loan is zero.  The defendant cites to no case to support his theory that the Court should disregard the unpaid principle resulting from the fraudulent loan and conclude there was no loss.  Indeed, as set forth below, the case law is squarely against the defendant's position.  The reasonably foreseeable pecuniary harm resulting from the defendant's false statements to NFB is the full amount of the loan issued as a result of the lies, namely, $5,583,500, minus the value of the collateral the bank recovered.

*See* USSG § 2B1.1 cmt. n.3(E)(ii).  The final actual loss is therefore $2,220,862.91. This actual loss amount is also the restitution the defendant owes to the FDIC which took over NFB.

Defendant has pled guilty and admitted that he committed the offense of making material misrepresentations and omissions to the bank in the course of obtaining a loan for the Kruses.  *See* plea agreement at pages 11-13, Sentencing on April 30, 2013 to Count 1.  Thus, the government has proved that the defendant made false statements about material information that resulted in the Kruses getting an over 5 million dollar loan.  The crime of false entries is the offense of conviction for purposes of determining loss and restitution.  The Kruses then defaulted on the loan.  The outstanding loan balance that the Kruses owed NFB is the reasonably foreseeable harm that resulted from the defendant's crime.  Reasonably foreseeable pecuniary harm means "pecuniary harm that the defendant knew or under the circumstances reasonably should have known was a *potential* result of the offense."  USSG § 2B1.1 cmt. n.3(A)(iv) (defining "reasonably foreseeable pecuniary harm") (emphasis added).  *United States v. Schild*, 269 F.3d 1198, 1201 (10th Cir. 2001).  Therefore, in a case involving fraudulent loan applications, the foreseeable pecuniary harm will almost always include the full amount of unpaid principal:

> This will almost invariably include the full amount of unpaid principal on the fraudulently obtained loan, as an unqualified borrower's default is clearly a reasonably foreseeable "potential result of the offense" within the meaning of Application Note 3(A)(iv). After all, the entire purpose of loan qualification criteria is to reduce the risk to banks that debtors will default on their loans.

*United States v. Turk*, 626 F.3d 743, 749-50 (2$^{d}$ Cir. 2010);  *See United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011) (holding that loss in mortgage fraud

case is the unpaid portion of the loan as offset by the value of the collateral because the transactions would not have occurred but for perpetration of the fraud).

The case here is no different than other fraud cases involving false statements at the loan's inception.  The defendant, a loan officer at the bank, certainly knew that accessing a borrower's credit worthiness is an essential step in deciding whether the bank should lend them money.  Therefore the defendant's misrepresentations and omissions concerning the Kruses' credit and his own personal interest in the loan went to the heart of NFB's decision.  He knew or certainly should have known that one consequence of his misrepresentations was that the Kruses would receive a loan they may not otherwise have obtained and then default.

The defendant argues that the "collapse of the dairy market" caused the loss and it had nothing to do with Mr. Bell.  This argument entirely ignores that the Kruses would not have had the loan in the first place *but for* the defendant's fraud in getting the loan for them.  The dairy market's collapse is not an "intervening act" that absolves the defendant of liability.  Indeed, it is defendant's actions that put the bank's money in jeopardy.  In *United States v. Speakman*, the Tenth Circuit addressed this very distinction between a "volitional act" such as a third party's intentional tort that causes the loss as opposed to circumstances directly related to offense conduct.  *See Speakman*, 594 F.3d 1165, 1173-74.  In *Speakman* the Tenth Circuit found that a company's negligent supervision of a fraud defendant could not be an intervening cause of the loss because the company's negligence only came into play because of the fraud defendant was committing.  *Id.*  The court contrasted the negligent supervision with the situation of a third party's intentional tort which causes a loss and is not directly related to the defendant's actions.  The latter constitutes an intervening event, but the events

3

set in motion by defendant's fraud cannot be considered a separate cause. *Id.  See also United States v Snow*, 468 Fed.Appx 830, 840 (10th Cir. 2012)(finding it reasonably foreseeable that when defendant fraudulently secures a loan he knew someone "was going to be harmed by his conduct.").  Here, the bank's exposure to the dairy market collapse through the Kruse loan only arose because the defendant lied to the bank in getting the loan in the first place.

Moreover, any other result would allow the defendant to escape liability and restitution for putting the bank's funds at risk simply because in this case the collateral retained its value. Courts have summarily rejected such an approach noting that to accept such an argument would encourage "would-be fraudsters to roll the dice on the chips of others, assuming all of the upside benefit and little of the downside risk." *Turk*, 626 F.3d at 750; *See also, United States v. Wendlandt*, ___ F.3d ___, 2013 WL 1694444 (6th Cir. 2013)(finding loss of unpaid principle from fraudulent loans foreseeable),*United States v. Mallory*, 709 F. Supp.2d 455, 459 (E.D.Va. 2010)(rejecting defendant's argument that loss caused by downturn in real estate market and not his false statements to lenders. Instead the court found that the loss to lenders was the foreseeable result of defendant's crimes and that such approach ensures that defendants who fraudulently induce financial institutions to assume the risk of lending to an unqualified borrower are responsible for the natural consequences of their fraudulent conduct.)

The actual loss suffered by the FDIC is $2,220,862.91, thus, this amount should be ordered as restitution because it constitutes the harm suffered by the FDIC.

**The Stock Loans**

Defendant is only contesting the restitution with respect to some of these loans. He makes two main arguments: 1) the victims' failure to submit a statement to Probation means they affirmatively do not want restitution, and 2) any restitution amount must account for any subsequent restructuring of the victims' loans, and because that is too difficult no restitution should be awarded. Both arguments should be rejected. His first argument that no restitution should be awarded simply because victims failed to submit a victim declaration has no support in case law or statute. Indeed restitution for bank fraud is mandatory pursuant to the statute. Failure to file a form with Probation does not overcome the statute's mandate. Nor is this the same situation as *Speakman* where the victim affirmatively requested no restitution. *Id.* at 1174. There is no evidence here that the individual farmers do not want restitution for buying worthless stock. To the contrary, all the victims have told law enforcement they want their money back. [1]

Second, for those victims who took out loans for both stock purchases and other purposes, the restitution should not be reduced proportionately by whatever new loan terms these victims have since negotiated. The individual farmers all took out loans to buy worthless stock. They paid that amount of money back and thus deserve restitution in those amounts. The government's argument does require this Court to conclude that the money paid back is attributed to the portion used to buy stock. But such a conclusion makes sense with the facts. The subsequent restructuring of these loans was not based on the worthless stock. The subsequent financial institutions bought and

---

[1] All the farmer victims have been deposed by the FDIC in its civil investigation and then interviewed several times by law enforcement in connection with this criminal investigation. In not one of these statements has any victim disclaimed any interest in receiving restitution. To the contrary they have described in many instances how the defendant conditioned any future loans or loan renewals on buying Bancorp stock. They also in some instances described how they liquidated assets to pay these loans back.

5

restructured the loans based on the livestock, land and other collateral held by the farmers, but not the stock as collateral. None of these institutions forgave any portion of the debt because the farmers had to buy worthless stock. Moreover, the farmers already expended the money for the stock purchases at the time they obtained the loan. Thus even if the loan was reduced later, the farmers did not have the option of buying less stock or diverting that portion of the money to projects that benefitted their property.

Again, the defendant's argument is nothing more than an attempt to use his victims' efforts to reduce their debt for his own benefit. He wants his restitution to be reduced because these farmers were able to negotiate with future lenders on the legitimate portion of their loans. He should not be able to escape the consequences of his fraudulent actions nor should his victims be denied their right to be made whole because they have since tried to be financially responsible with their existing obligations. In the event this Court does choose to reduce the restitution proportionately, the defendant's complexity argument is belied by his own brief. The defendant has calculated the proportionate restitution and demonstrated that it is not too complicated to do.

With respect to the Shable family, the government has provided the defendant with the document proving that the Shables paid their loan in full. Specifically, Gov Ex 10 of the sentencing exhibits which were submitted to the Court at sentencing is the loan pay off sheet for the loan the Shables took out solely to buy stock. The Shables had to sell land in order to pay back NFB for this loan. Therefore, the defendant's identified ground for contesting restitution for the Shables is baseless.

**Conclusion**

The government respectfully requests the Court order restitution in the amounts set forth in its initial brief.

                JOHN F. WALSH
                United States Attorney

                s/ Suneeta Hazra
                SUNEETA HAZRA
                Assistant United States Attorney
                1225 17th Street, Suite 700
                Denver, CO 80202
                Phone: (303) 454-0100
                Fax: (303) 454-0402
                Suneeta.Hazra@usdoj.gov

                s/ Thomas M. O'Rourke
                THOMAS M. O'ROURKE
                Assistant United States Attorney
                1225 17th Street, Suite 700
                Denver, CO 80202
                Phone: (303) 454-0100
                Fax: (303) 454-0402
                Thomas.ORourke@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2013, I electronically filed the foregoing **GOVERNMENT'S REPLY BRIEF ON LOSS AND RESTITUTION** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email address:

**Saskia A. Jordan**
sjordan@hmflaw.com

By:   s/ Andrea K. Hough
      Office of the United States Attorney

8